Josie G. Cashin, Respondent, *v.* City of New Rochelle, Appellant.

(Argued April 1, 1931; decided May 12, 1931.)

*Patrick J. Rooney, Corporation Counsel,* for appellant. The defendant is not responsible for an increased flow of water occasioned by city improvements. (*Prime* v. *City of Yonkers,* 192 N. Y. 105; *Rutherford* v. *Village of Holly,* 105 N. Y. 632; *Lynch* v. *Mayer,* 76 N. Y. 60; *Anchor Brewing Co.* v. *Dobbs Ferry,* 84 Hun, 274; *Lessenger* v. *Harlan,* 168 N. W. Rep. 803; *Fox* v. *City of New Rochelle,* 240 N. Y. 109; *Noonan* v. *City of Albany,* 79 N. Y. 470; *North Dakota* v. *Minnesota,* 263 U. S. 365; *O'Donnell* v. *City of Syracuse,* 184 N. Y. 1.) The trial court erred in allowing fee damage based upon a supposedly continuing cause when as a matter of fact the alleged injury was merely occasional and recurrent and can be remedied by either the city or the owner at any time. (*Bartlett* v. *Grasselli Chemical Co.,* 27 A. L. R. 54; *Matter of Village of Middletown,* 82 N. Y. 196.)

There is no evidence of rental damage due to the installation of the drain complained of. (*Mailland* v. *Kerrigan*, 187 N. Y. Supp. 495; *Matter of West 205th Street*, 240 N. Y. 68; *Matter of Jennings Street*, 207 App. Div. 170.) The court erred in allowing $28,500, representing the cost of building a new culvert to carry the flow of the brook through the plaintiff's property, as fee damage. (*Cooper* v. *New York, L. & W. Ry. Co.*, 122 App. Div. 128; *Fromm* v. *Ide*, 68 Hun, 310; *Berg* v. *Parsons*, 90 Hun, 267.) The court erred in allowing $12,000 fee damage for a continuing trespass in maintaining the mound or ridge over the sewer. (*Dietzel* v. *City of New York*, 218 N. Y. 270.) The plaintiff was not a party to the sewer right of way agreement and cannot sue for damages for condition broken. Those damages, if any, belong to the executors, administrators or assigns of the original party and not to plaintiff, as against whom the city has acquired a right to maintain the ridge by adverse possession. (*Taylor* v. *N. Y. & H. R. R. Co.*, 27 App. Div. 190; *Powlowski* v. *Mohawk Golf Club*, 204 App. Div. 200; *Prime* v. *City of Yonkers*, 192 N. Y. 106; *Miller* v. *Clary*, 210 N. Y. 127; *Kidder* v. *Port Henry Iron Ore Co.*, 201 N. Y. 445; 207 N. Y. 768; *Beach* v. *Barons*, 13 Barb. 305; *Shalet* v. *Stoloff*, 135 App. Div. 376.)

*Albert Ritchie* for respondent. The defendant is liable to the plaintiff for collecting the surface waters into artificial channels and dumping them suddenly and in great volume on her property. (*Hentz* v. *City of Mt. Vernon*, 78 App. Div. 515; *Fox* v. *City of New Rochelle*, 240 N. Y. 109; *Noonan* v. *City of Albany*, 79 N. Y. 470; *Chapman* v. *City of Rochester*, 110 N. Y. 273; *Butler* v. *Village of Edgewater*, 6 N. Y. Supp. 174; *Lumley* v. *Village of Hamburg*, 181 App. Div. 441; *Mendelson* v. *State of New York*, 218 App. Div. 210.) The evidence justifies the amount of permanent damage awarded and there was no error in the admission of evidence on this point.

(*Hartshorn* v. *Chaddock*, 135 N. Y. 116.) The allowance for rental damage was extremely moderate. (*Colrick* v. *Swinburne*, 105 N. Y. 503; *Prime* v. *City of Yonkers*, 131 App. Div. 110; *Matter of Simmons*, 138 App. Div. 350; 195 N. Y. 575; *Matter of Armory Board*, 73 App. Div. 152; *Matter of Bronx Parkway Comm.*, 191 App. Div. 212; *Matter of City of New York*, 197 App. Div. 432; *Mendelson* v. *State of New York*, 218 App. Div. 210.) The construction of the mound or ridge through the plaintiff's property, over the sewer, is a wrong for which plaintiff is entitled to redress. (*Fox* v. *City of New Rochelle*, 209 App. Div. 889; 240 N. Y. 109.) The plaintiff being the successor in title to the original party to the agreement, is entitled to maintain the action. (*Henneky* v. *Stark*, 128 N. Y. Supp. 761; *Munro* v. *Syracuse, L. S. & N. R. R. Co.*, 200 N. Y. 224; *Miller* v. *Crary*, 210 N. Y. 127; *Nye* v. *Hoyle*, 120 N. Y. 195; *Mott* v. *Oppenheimer*, 135 N. Y. 312; *Trustees* v. *Lynch*, 70 N. Y. 440; *Satterlee* v. *Erie R. R. Co.*, 113 App. Div. 462.)

POUND, J. The complaint herein states two causes of action, one for an injunction and damages for the discharge on plaintiff's premises of surface waters collected in a single channel and thereby, as is alleged, cast in a substantially increased volume on such premises; another to require the defendant to remove a ridge or mound of earth left across plaintiff's premises after the construction of a sewer on a right of way over such premises granted by the then owner thereof in the year 1894 or to pay damages. The plaintiff's recovery is for the sum of $55,500 damages, being $15,000 for damages to rental value for six years prior to the commencement of this action; $28,500 for damages to fee value due to overflowing of lands, and $12,000 damages to fee value due to the ridge left on the premises after the construction of the sewer.

Burling brook is an old natural watercourse running through plaintiff's property, carrying off surface waters from the neighborhood watershed. Plaintiff's property is a parcel of low, vacant land which has a frontage on Weyman avenue in the city of New Rochelle of 481 feet. It slopes from both sides towards the brook which is the lowest point thereof. It is described as a small farm or vegetable garden of 8.6 acres and is leased for such purposes for $300 a year, but its prospective value for industrial and business purposes is large. It is zoned for such purposes and the city's witnesses value it at $125,000.

The evidence justifies the conclusion that in or about the year 1921 the city constructed artificial channels which collected surface waters and discharged the same into Burling brook where they would naturally go. It is contended that the force and volume, if not the quantity, of water was thereby substantially increased, independently of the increased flow of surface water caused by city improvements such as the paving of streets and building of houses or by heavy rains and that plaintiff has sustained damages by reason of such increased force and volume for which the city is liable. (*Fox* v. *City of New Rochelle*, 240 N. Y. 109, 112.) The *Fox* case, it will be noted, came up on an appeal from a unanimous affirmance under the Constitution of 1894, before the Judiciary Article was amended in 1925, and the only questions before the court were those considered in the opinion.

The mere facts that the city has collected surface waters in a single channel and that the brook has at times overflowed its banks are not sufficient to impose liability on the city. The relation of cause and effect must be established. The burden is on the plaintiff to establish that the flooding was caused by the construction of artificial channels rather than by unprecedentedly heavy rains. (*North Dakota* v. *Minnesota*, 263 U. S. 365.) The respondent concedes in her brief that the flooding occurs only during heavy rains. The tenant of

the premises testifies that there has been no change in the condition in that respect since he began to cultivate the land in 1920. While this may be regarded as a question of fact, as other witnesses testify to substantially increased overflowing in 1927 " on account of the big flood," there is no evidence of any substantial overflow of plaintiff's lands, except intermittently and occasionally in times of heavy rains, which is attributable to the construction of the city drain, independent of natural causes.

We held in the *Fox Case* (*supra*) that it was error to limit the amount of surface water to be discharged into Burling brook to the amount as it existed at any prior date and that the city is not liable for the natural flow of surface water. As the city cannot be compelled to construct drains for the disposal of surface water, however injurious the result may be to the owner of land through which a natural watercourse runs, we must scrutinize the proof on which rests the substantial award of damages herein in order to separate the right from the wrong.

In so doing we are led to the following conclusions: The evidence indicates no permanent condition of overflowing but only recurring single instances in time of heavy rains, giving rise to a separate and complete cause of action, if any, in favor of plaintiff each time her lands are wrongfully flooded. (*Meruk* v. *City of New York*, 223 N. Y. 271, 274, 276.) The award of damages for conditions of a permanent character was not warranted.

But if we proceed on the theory that the plaintiff's injuries are of a permanent character, she is not materially benefited. Let us consider:

*First*, evidence of rental value. The proof on this point seems altogether theoretical, vague and speculative. How. has the overflow attributable to the drain alone affected rental value? What would be the rental value of the premises without such additional overflow? What is the rental value of the premises with it? Such is the true

measure of damages. Witnesses base their estimate on ten per cent of the market value of the land as a fair rental value of lands in general and value the land at $231,843, less the engineer's estimate of $43,500 for constructing a covered drain across the property and filling in the low land to the street level. They then make the loss of rental value ten per cent of $43,500 annually, or more than $23,000 since the construction of the drain. No competent proof of any loss of rental value was adduced on the trial. It did not appear that the property would have rented more readily if the lands were not occasionally overflowed or that there had been any demand for such property except for farming purposes. The estimate based on the value of the land, while fair enough as to leased property in general, is inapplicable to land which had been leasable for farm purposes only, while awaiting a prospective market for business purposes, in the absence of proof tending to establish that the lands might have been rented to better advantage if they had been subject only to the natural flow of surface waters. A fair rental value is what a man may reasonably expect to obtain for his lands as tested by experience rather than by an arithmetical formula. Such doctrinaire disregard of circumstances as is displayed by plaintiff's witnesses establishes no loss of income from rents. If the owner cannot expect to lease his land for any purpose, he is not to be awarded damages because he does not lease it. He would thereby be taking out the speculative unearned increment in advance.

*Secondly*, evidence of actual value. The witnesses say that the construction of a covered drain across the premises would cost $28,500 and that such is the measure of damages for flooding the land, *i. e.*, the cost of removing all the waters that now flow on the surface, through an artificial channel. But it does not appear that this expense is less than the difference in value between the land subject to occasional overflows by reason of increased

volume of water in time of heavy rains due to the construction of the channel complained of and to the same land free from such increased overflows. Such is the ordinary measure of damages. Common sense suggests that this difference is nominal rather than substantial. The ideas of experts cannot make it otherwise.

As to the second cause of action. In 1894 Anne Cashin, the owner of the premises, granted the city (then village) and the Commissioners of Sewers thereof a right of way across the land for the construction and maintenance of sewers, subject to the condition that " fences and grounds disturbed or removed by said parties * * * for any of the purposes aforesaid shall be restored to the same condition as found by " such parties. When the sewer was constructed more than thirty years ago, a mound or ridge of earth between eighteen and twenty feet wide was left four or five feet higher than the former level of the ground, running across the premises. Plaintiff has been awarded $12,000 damages to the actual value of the land, being the estimated cost, not of leveling the surface of the ground to its former condition, but of filling. in the property to the level of Weyman avenue, which it adjoins, to a depth of eleven feet. The award has been made on the theory that the mound or ridge is a continuing nuisance or trespass and that the cause of action therefor is not barred by the Statute of Limitations, except as to damages accrued more than six years prior to the commencement of the action. (*Colrick* v. *Swinburne*, 105 N. Y. 503; *Reed* v. *State*, 108 N. Y. 407.) But the mound or ridge is no tortuous injury to the land; no wrong exclusive of contract. It is on the right of way. At most, it was so left in breach of the condition on which the right of way was granted, *i. e.*, to restore the land to the condition in which it was found before the sewer was constructed in 1894. This condition was not a covenant which passed with the land to which it was incident. The right of way was granted on a condition personal to

the grantor, which she alone could enforce. (*Cole* v. *Hughes*, 54 N. Y. 444; *Guaranty Trust Co.* v. *N. Y. & Q. C. Ry. Co.*, 253 N. Y. 190, 204.) It is too late a day for the assertion of rights which came into existence nearly thirty years ago and have been lying dormant until this action was begun.

As it would be a fine thing for plaintiff to have the land improved at the cost of the city by the construction of a covered drain across it, so she would be greatly benefited if the property were filled in to the street level, but on this theory of the case the city has reduced the amount of fill necessary for this purpose by partly making it to the extent of a ridge eighteen or twenty feet wide and four or five feet high. Yet the cost of the completed fill is urged as the measure of damages chargeable against the city.

A suitor has the right to be protected against loss attributable to another's wrong. In general, injuries to property, unattended by any species of aggravation, are followed by damages proportioned to the actual pecuniary loss sustained. This may be a nominal or a substantial amount. The question is, what amount will restore the owner to his original position?

To improve plaintiff's property, as it must be improved to make it available for business purposes, by covering Burling brook and filling to the street level, is to better conditions for plaintiff rather than to reimburse her for damages due to defendant's wrong. It may be that the city is responsible in some small degree for damages it has caused by permitting an intermittent increase in the volume of overflow on plaintiff's lands, but conditions are in large measure due to natural causes acting upon the structure and conformation of the land. To hold that the city should be cast in substantial damages for such conditions without fault on its part would be to extend the doctrine of municipal liability beyond all reason and authority.

The judgment should be reversed, a new trial granted as to the first cause of action and the complaint dismissed as to the second cause of action, with costs to the defendant in all courts.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.