BETTYE LEE TAYLOR, Appellant, *v.* THE CITY OF ALBANY and Another, Respondents.

Third Department, November 14, 1933.

*Ernest P. Lyons,* for the appellant.

*George A. Reilly, Corporation Counsel* [*Anthony De Stefano, Assistant Corporation Counsel,* of counsel], for the respondent City of Albany.

*Whalen, McNamee, Creble & Nichols* [*Charles E. Nichols* of counsel], for the respondent New York Central Railroad Company.

HILL, P. J.   Plaintiff appeals from a judgment entered upon an order dismissing her complaint and setting aside a verdict for injuries received when the automobile which she was driving skidded upon an icy pavement, striking one of the steel columns that support the railroad bridge over an Albany city street.   The trial judge set aside the verdict as against the city for failure of the plaintiff to comply with that portion of section 244 of the Second Class Cities Law which says: " But no such action shall be maintained for damages or injuries to the person sustained solely in consequence of the existence of snow or ice upon any sidewalk, cross walk or street, unless written notice thereof, relating to the particular place, was actually given to the commissioner of public works and there was a failure or neglect to cause such snow or ice to be removed, or the place otherwise made reasonably safe within a reasonable time after the receipt of such notice," and against the railroad company upon the ground that the verdict could be based upon surmise and speculation only, as the proof indicated that water, which had formed into ice in the under pass, came from several sources and that it was impossible to say that the water from railroad property produced the ice which contributed to the injury.

The *locus in quo* is the point where the Albany-Schenectady improved highway passes under the tracks of the defendant railroad

company. At the time the under pass was built the level of the highway was lowered for about one thousand feet. The railroad bridge crosses over the highway at its lowest point, from which there are ascending grades of three per cent for about five hundred feet, both to the east and west. The bridge covers about one hundred ninety feet of the highway, and has a total width of sixty-two and a half feet. It is sustained by concrete abutments at each lateral extremity, and by three intervening colonnades each containing twelve steel columns. The center colonnade separates trolley tracks from the paved highway; twenty-five feet northerly and across a sixteen-foot brick pavement another colonnade is located; twenty-five feet to the south and across the trolley tracks is a third colonnade. The columns of the northerly colonnade are supported by a concrete sleeper continuous the entire length of the bridge. The columns of the center colonnade are supported by separate concrete footings. The top of the footings and the sleeper is higher than the paved portion of the street. At the time of plaintiff's injury the pass was not provided with drainage. Water gathered under the entire length of the bridge, coming from the easterly and westerly grades upon which the highway was laid, and the railroad embankment, also from the superstructure of the bridge. On the day of the accident substantially the entire street under the bridge was coated with ice several inches thick, while the pavement to the east and west was dry. Plaintiff, approaching from the west, had occasion to apply the brakes to accommodate her speed to that of an automobile ahead. The car skidded upon the ice, turned to the north, struck one of the columns of the northerly colonnade, and she received quite serious injuries.

The defendant railroad company built and maintained the bridge. The city approved the construction by allowing it to be maintained for many years, and fixed the level of the pavement below the adjacent surface. Each knew that no drainage was provided to remove the water which gathered in this hollow, that it was held upon the pavement by the footings of the adjacent colonnades, and that in freezing weather ice would be formed, which being shaded by the bridge would melt more slowly than on other portions of the pavement. For this reason, each recurring thaw, followed by a freeze, would thicken the blanket of ice until the roadway was raised so that the water drained to the sides.

The city, jointly with the railroad company, created this dangerous condition, and is presumed to know of its own negligent acts. Written notice was unnecessary. (*Root* v. *City of Saratoga Springs*, 218 App. Div. 237; *Jones* v. *City of Binghamton*, 198 id. 183; *Twist* v. *City of Rochester*, 37 id. 317.) The city of Albany failed in its

duty to use the care requisite to maintain the street in a reasonably safe condition for travel. The railroad company failed to maintain its structures over the highway so that water would not drain and leak upon the pavement, creating a dangerous and unsafe condition. (*Todd* v. *City of Troy*, 61 N. Y. 506; *Klepper* v. *Seymour House Corp.*, 246 id. 85.)

The judgment should be reversed on the law and facts, and the verdict of the jury reinstated.

RHODES, MCNAMEE and HEFFERNAN, JJ., concur; CRAPSER, J., dissents, and votes to affirm the orders and judgment appealed from, with costs.

Orders and judgment reversed on the law and facts, with costs, and the verdict reinstated.